**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| GALLIENNE NABILA,<br><br>Plaintiff,<br><br>v.<br><br>LUX LOUNGE, LLC d/b/a CRU CHARLOTTE,<br><br>And,<br><br>CRU FRANCHISING INTERNATIONAL, LLC,<br><br>Defendants. | **Civil Action No.: 3:26-cv-895**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff GALLIENNE NABILA ("Plaintiff") files this Complaint against LUX LOUNGE, LLC, d/b/a CRU CHARLOTTE ("CRU") and CRU FRANCHISING INTERNATIONAL, LLC ("Franchisor") (collectively "Defendants") and respectfully alleges as follows:

## BACKGROUND

1. This is an action for damages and injunctive relief relating to CRU's misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiff, who is a well-known professional model, to promote their lounge, CRU CHARLOTTE located at 3428 N Tyron St, Charlotte, North Carolina 28206 (hereinafter referred to as the "Lounge" or "CRU").

2. As detailed below, Defendant's misappropriation and unauthorized use of Plaintiff's images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising; c) Common Law Right of Privacy - Misappropriation; d) Violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 et seq.; e) Defamation; f) Negligence, Gross Negligence, and Respondeat

Superior; g) Conversion; h) Unjust Enrichment; and i) Quantum Meruit.

3. In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiff likewise seeks an Order from this Court permanently enjoining Defendants from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff has stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5. This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6. Plaintiff is, and at all times relevant to this action has been, professional models who reside throughout the United States.

7. According to publicly available records, Defendant LUX LOUNGE, LLC, is a limited liability company formed under the laws of the state of North Carolina, with its principal place of business located at 3428 N Tyron St, Charlotte, North Carolina, 28206. Upon information and belief, LUX LOUNGE, LLC operates CRU CHARLOTTE, which is located at 3428 N Tyron St, Charlotte, North Carolina 28206.

8. According to publicly available records, Defendant CRU FRANCHISING INTERNATIONAL, LLC, is a limited liability company formed under the laws of the state of Delaware, with its principal place of business located at 691 John Wesley Dobbs Ave NE, Suite V-144, Atlanta, Georgia, 30312.

9. Venue is proper in the United States District Court for the Western District of North Carolina under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

10. This Court has personal jurisdiction over Defendant CRU FRANCHISING INTERNATIONAL, LLC ("Franchisor") because Franchisor purposefully directed its conduct at the State of North Carolina and this District. Franchisor licensed the CRU trademarks and brand system to a Charlotte, North Carolina licensee; created, approved, and distributed brand-level

advertising creative for use at North Carolina locations; and derived revenue from the Charlotte location. Plaintiff's claims arise directly out of and relate to those North Carolina-directed contacts.

11. A significant portion of the alleged causes of action arose and accrued in Charlotte, North Carolina and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Charlotte, North Carolina.

## PARTIES

***Plaintiff***

12. Plaintiff GALLIENNE NABILA ("NABILA") is a well-known professional model, and a resident of Los Angeles County, California.

***Defendants***

13. Defendant, LUX LOUNGE, LLC d/b/a CRU CHARLOTTE d/b/a CRU, is a limited liability company formed under the laws of the state of North Carolina and registered to conduct business in North Carolina. During times relevant to this action, LUX LOUNGE, LLC operated CRU CHARLOTTE.

14. Service of process may be perfected upon Defendant LUX LOUNGE, LLC d/b/a CRU CHARLOTTE by serving the registered agent for service of process, Dimitri Parker, who can be located at 3428 N Tyron St, Charlotte, NC 28206.

15. Defendant, CRU FRANCHISING INTERNATIONAL, LLC ("Franchisor"), is a limited liability company formed under the laws of the state of Delaware and registered to conduct business in Delaware. Upon information and belief, CRU FRANCHISING INTERNATIONAL, LLC, exercised control over and provided ongoing marketing and promotional support to its franchisee locations, including the Defendants' lounges. As part of the franchise relationship, Franchisor maintained and operated centralized marketing and social media platforms used to promote the franchise brand. Franchisor routinely reposted, shared, and disseminated images and promotional content created by the franchisee lounges, including images depicting Plaintiffs' likeness without authorization.

16. Service of process may be perfected upon Defendant CRU FRANCHISING

INTERNATIONAL, LLC by serving the registered agent for service of process, C T Corporation System, who can be located at 289 S Culver St, Lawrenceville, GA 30046.

## FACTUAL ALLEGATIONS

17. The Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

18. Plaintiff's career in the modeling industry places a high degree of value on its goodwill and reputation, which is critical to maximize its earning potential, book modeling contracts, and establish each of its individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiff is necessarily selective concerning the companies and brands for which they model.

19. The Plaintiff's Image was misappropriated, and intentionally altered, by CRU to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with CRU.

20. In the case of the Plaintiff, this apparent claim was false.

21. Moreover, this misappropriation occurred without Plaintiff's knowledge, consent, or authorization.

22. Plaintiff has ever received any remuneration for CRU's improper and illegal use of their Images, and CRU's improper and illegal use of Plaintiff's Images have caused Plaintiff to suffer substantial monetary damages and harm to reputation.

23. Further, in certain cases CRU misappropriated Plaintiff's advertising ideas because the Images they misappropriated came from Plaintiff's own social media pages, which Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiff's Individual Background and Career***

24. NABILA is an actress and model residing in Los Angeles, California. From a young age she participated in pageants, public speaking, dance, community service work, and singing. Nabila has been in the entertainment industry for over a decade working with brands such as Fashion Nova. She is currently signed to Wilhelmina Los Angeles and has a nonprofit geared

towards the empowerment and advancement of young women. Nabila has over 2 million social media followers.[1]

25. That we know of, NABILA is depicted in the photo in Exhibit "A" to promote CRU on its Instagram account. This Image was intentionally altered to make it appear that Nabila was either an employee working at CRU, that she endorsed CRU, or that she was otherwise associated or affiliated with CRU.

26. NABILA has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendant's Business Activity and Misappropriation***

27. CRU operates (or operated, during the relevant time period) a Lounge, where it is (or was) engaged in the business of selling alcohol and food in a sexually charged atmosphere.

28. CRU owns, operates, and controls CRU's social media accounts, including its Facebook, Twitter, and Instagram accounts.

29. CRU used CRU's Facebook, Twitter, and Instagram accounts to promote CRU's, and to attract patrons.

30. CRU did this for its own commercial and financial benefit.

31. CRU has used, advertised, created, printed, and distributed the Images of Plaintiff, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at CRU, endorsed CRU, or was otherwise associated or affiliated with CRU.

32. CRU used Plaintiff's Images and created the false impression with the public that Plaintiff worked at or endorsed CRU to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing,

---

[1]In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

33. CRU was well aware that the Plaintiff has not ever been affiliated with or employed by CRU, and at no point has the Plaintiff ever endorsed CRU or otherwise been affiliated or associated with CRU.

34. All of CRU's activities, including their misappropriation and republication of Plaintiff's Images, were done without the knowledge or consent of Plaintiff

35. CRU has never compensated Plaintiff for the unauthorized use of Plaintiff's Images.

36. Plaintiff has never received any benefit from CRU's unauthorized use of their Images.

***Franchisor's Role in the Misappropriation***

37. Franchisor owns and licenses the CRU and CRU "Catch a Vibe" trademarks and trade dress, which appear on the advertisement identified in Exhibit A.

38. Franchisor publicly markets its franchise program at https://www.crulounge.com/franchise. A true and correct copy of that page, captured on September 7, 2026, is attached as Exhibit B. On that page, Franchisor represents that it has "expanded nationally" since it began "franchising in 2020," that it offers "PRO MARKETING SUPPORT" as one of three principal categories of franchisee support, that its system includes "Local Launch Plans" and "A Centralized Management Portal," and that it collects a Royalty Fee of 7% and a Marketing Fee of 2%.

39. Under the heading "WHAT'S INCLUDED IN CRU LOUNGE," Franchisor displays, as an illustration of what franchisees receive, a promotional event advertisement for a CRU-branded location at 2714 Guadalupe Street, Austin, Texas, bearing the CRU "Catch a Vibe" mark. Franchisor thereby represents to prospective and existing franchisees that promotional advertising creative of the type identified in Exhibit A is furnished as part of the CRU franchise system.

40. Upon information and belief, Franchisor created, approved, or supplied brand-level advertising creative, including promotional event advertising, for use across its licensed locations, including the Charlotte location.

41. Upon information and belief, under the franchise or license agreement governing the Charlotte location, Franchisor retained the right to review, approve, and require or prohibit local advertising, and retained the right to control the use of its marks in advertising, including the advertisement identified in Exhibit A.

42. Franchisor received a direct financial benefit from the advertising published at the Charlotte location, including through the 7% Royalty Fee and 2% Marketing Fee it discloses at Exhibit B.

43. Upon information and belief, Franchisor had actual or constructive knowledge that advertisements bearing its marks depicted individuals who had not consented to and were not compensated for the commercial use of their Images.

***Standard Business Practices in the Modeling Industry***

44. It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

45. The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

46. Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***CRU's Misappropriation of Plaintiff's Images***

47. CRU was aware that, by using Plaintiff's Images, they were violating Plaintiff's

right to privacy, Plaintiff's right of publicity, and creating a false impression to potential customers that Plaintiff worked at or endorsed CRU.

48. Unauthorized use of Plaintiff's Images deprives them of income they are owed relating to the commercialization of their Images.

49. In addition, Plaintiff alleges that any improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of a false impression of association with CRU.

50. At no point was any Plaintiff ever contacted by CRU, or any representative of any CRU, to request the use of any of Plaintiff's Images.

51. CRU never obtained, either directly or indirectly, permission to use any of Plaintiff's Images.

52. CRU never paid Plaintiff for its use of her Images on any promotional materials, including CRU's website, Twitter, Facebook, or Instagram accounts.

53. CRU used Plaintiff's Images without their consent, and without providing remuneration, in order to permanently deprive the Plaintiff of her right to use her Images.

54. Further, Plaintiff is informed and believes, and thereon alleges, that the unauthorized use, display, publication, and commercial exploitation of Plaintiff's images by CRU was not openly disclosed to Plaintiff and was not reasonably discoverable through ordinary diligence at the time the subject images were initially posted or published.

## FIRST CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

55. Plaintiff re-alleges each and every allegation set forth in the paragraphs above, and incorporates the same by reference as though fully set forth herein.

56. Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to CRU, and protects Plaintiff from the conduct described herein.

57. CRU used Plaintiff's image in order to create the false impression with the public that Plaintiff either worked at CRU's establishment or endorsed CRU's businesses. This was done to promote and attract clientele to CRU's establishment, and thereby generate revenue for CRU.

58. Thus, this was done in furtherance of CRU's commercial benefit.

59. Plaintiff is in the business of commercializing its identity and selling its images to reputable brands and companies for profit. CRU's customers are the exact demographic that view Plaintiff's images in magazines and online. By virtue of Plaintiff's use of its image and identify to build its brand, it has acquired a distinctiveness through secondary meaning. Plaintiff's image either suggests the basic nature of its product or service, identifies the characteristic of its product or service, or suggest the characteristics of its product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, its brand – the reason their clients seek to hire them – is unique in that it is encompassed in its identity, i.e., their persona.

60. Both Plaintiff and CRU compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

61. As such, an unauthorized use of Plaintiff's image to promote an establishment created an undeniable confusion in CRU consumers' minds, which lead to competitive injury to Plaintiff. There is no doubt that CRU used Plaintiff's image for advertising purposes, that is to promote their business enterprises, as such, CRU's unauthorized and unlawful use of Plaintiff's image and likeness was an existing intent to commercialize an interest in Plaintiff's image and likeness

62. CRU's use of Plaintiff's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiff's fans and present and prospective clients into believing that CRU's establishment advertisements are endorsed by Plaintiff, or sponsored, approved or associated with Plaintiff.

63. Despite the fact that CRU was at all times aware that Plaintiff neither worked at, nor endorsed its establishment, nevertheless, they used Plaintiff's image in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with CRU's establishment.

64. CRU knew that their use of Plaintiff's image would cause consumer confusion as to Plaintiff's sponsorship and/or employment at CRU's establishment.

65. Upon information and belief, CRU's use of Plaintiff's image did in fact cause consumer confusion as to Plaintiff's employment at and/or endorsement of CRU's businesses, and the goods and services provided by CRU.

66. Franchisor is directly liable under 15 U.S.C. § 1125(a)(1)(A) because Franchisor itself used Plaintiff's Images in commerce. Franchisor created, approved, or supplied the advertising creative bearing Plaintiffs' Images for publication at CRU-branded locations, and published or republished advertisements bearing Plaintiffs' Images on brand-controlled social media accounts. Each such act constitutes a use in commerce of a false designation of origin, sponsorship, approval, or association within the meaning of § 1125(a)(1)(A). In the alternative, Franchisor is contributorily liable because it had actual or constructive knowledge that advertisements bearing its licensed marks depicted individuals who had not consented to or been compensated for the commercial use of their Images, and materially contributed to that use by supplying the creative, licensing the marks under which it was published, exercising approval authority over local advertising, and continuing to authorize the use of its marks in those advertisements.

67. As a direct and proximate result of Defendants' actions, Plaintiff have no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Plaintiff's image, likeness and/or identity, or how Plaintiff's image, likeness and/or identity is being depicted by Defendants.

68. Further, any failure, neglect or default by Defendants will reflect adversely on Plaintiff as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiff to continue to protect their reputation for high quality professional modeling,

resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiff.

69. Due to Defendants' unauthorized use of Plaintiff's image, Plaintiff has been damaged in an amount to be determined at trial.

70. WHEREFORE, Plaintiff respectfully request that the Court enter a judgment against Defendants and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## SECOND CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising)**

71. Plaintiff re-alleges each and every allegation set forth in the paragraphs above, and incorporates the same by reference as though fully set forth herein.

72. Section 43 of the Lanham Act, 15 U.S.C. § 1125, et seq. applies to CRU and protects Plaintiff from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

73. CRU used Plaintiff's image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiff worked at or were otherwise affiliated with CRU's establishment, endorsed CRU's businesses and activities, and/or consented to or authorized CRU to use their image in order to advertise, promote, and market CRU's businesses, CRU's establishment, and/or CRU's establishment events and activities.

74. CRU's use of Plaintiff's image, likeness and/or identity to advertise, promote and market CRU's businesses, CRU's establishment, and/or CRU's events and activities as described in this Complaint was false and misleading.

75. CRU's unauthorized use of Plaintiff's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiff worked at or were otherwise affiliated with CRU's establishment, endorsed CRU's businesses, CRU's establishment or CRU events or activities, or consented to or authorized CRU's usage of its image in order to advertise, promote, and market CRU's businesses or CRU events and activities and/or that Plaintiff would participate in or appear at the specific events promoted in the advertisements.

76. CRU's false advertising described above have the capacity or tendency to confuse consumers, including actual and prospective patrons of CRU's establishment, as to the general quality of attendees and participants of CRU's establishment and in their events, as well as specifically whether Plaintiff worked at or were otherwise affiliated with CRU's establishment, endorsed CRU's businesses, CRU's establishment or CRU establishment events or activities, or consented to or authorized CRU's usage of their image in order to advertise, promote, and market CRU's businesses or CRU establishment events and activities.

77. Upon information and belief, CRU's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiff worked at or was otherwise affiliated with CRU's establishment, endorsed CRU's businesses, or CRU establishment events and activities, or consented to or authorized CRU's usage of its image in order to advertise, promote, and market CRU's businesses or CRU establishment events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join CRU's establishment, visit CRU's establishment, and participate in events at CRU's establishment and had a material effect and impact on the decision of members and prospective members and participants to join CRU's establishment, visit CRU's establishment and take part in the events at CRU's establishment.

78. CRU's unauthorized use of Plaintiff's image, likeness and/or identity as described herein was designed to benefit CRU's businesses interests by, among other things, promoting CRU's establishment and their activities and attracting clientele to CRU's establishment.

79. CRU knew or should have known that their unauthorized use of Plaintiff's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

80. Franchisor made or caused to be made the false and misleading representations described in this Count. Franchisor authored, approved, or furnished the advertising creative depicting Plaintiff's Images. Franchisor's conduct was undertaken for its own commercial benefit, in that Franchisor derived royalties, license or franchise fees, advertising fund contributions, or a share of revenue generated by the advertising described herein. In the alternative, Franchisor knowingly and materially contributed to the false advertising described in this Count by supplying the creative, licensing the marks under which it was published, and retaining and exercising the right to approve, require, or prohibit the local advertising in which Plaintiffs' Images appeared.

81. Defendants' unauthorized use of Plaintiff's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

82. Defendants' wrongful conduct as described herein was willful.

83. As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

84. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiff of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiff.

85. The method and manner in which Defendants used the image of Plaintiff further evinces that Defendants were aware of or consciously disregarded the fact that Plaintiff did not consent to Defendants' use of their image to advertise Defendants' businesses.

86. Defendants have caused irreparable harm to Plaintiff, its reputation and brand by attributing to Plaintiff the establishment lifestyle and activities at Defendants' establishment.

87. Defendants' unauthorized use of Plaintiff's image, likeness and/or identity directly and proximately caused and continues to cause damage to Plaintiff in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
## (Common Law Right of Privacy - Misappropriation)

88. Plaintiff re-alleges each and every allegation set forth in the paragraphs above, and incorporates the same by reference as though fully set forth herein.

89. CRU has appropriated Plaintiff's likeness for CRU's commercial purposes without authority or consent from Plaintiff.

90. CRU misappropriated Plaintiff's likenesses by publishing its Images on CRU's website or related social media accounts as part of CRU's advertising campaign.

91. CRU's website and social media accounts were designed to advertise and attract business to CRU and generate revenue for CRU.

92. Plaintiff is informed and believes and hereon alleges that the manner in which CRU posted and publicized its image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that CRU published its image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

93. Plaintiff further informed and believes and hereon alleges that discovery will prove that CRU's republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

94. Plaintiff is informed and believes and hereby alleges that CRU's republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

95. Upon information and belief, CRU use of Plaintiff's image and likeness did in fact attract clientele and generate business for CRU.

96. At no point did CRU ever seek or receive permission or consent to use any Plaintiff's Image for any purpose.

97. CRU was at all relevant times aware that it had never received Plaintiff's permission or consent to use their Images in any medium for any purpose.

98. At no point did CRU ever compensate Plaintiff for its unauthorized use of its Images.

99. CRU's misappropriation of Plaintiff's image and likeness in some cases was in violation of copyrights and licenses lawfully held by others, and CRU's lack of respect for those rights was likewise a proximate cause of the harm done to Plaintiff from CRU's misappropriation of their Images.

100. Franchisor directly participated in the misappropriation of Plaintiff's likeness by creating, approving, or supplying the advertising creative in which the Image appeared, and by publishing or republishing that creative on brand-controlled accounts, and appropriated the commercial value of Plaintiff's likeness for its own benefit.

101. Separately, upon information and belief, Franchisor retained the right to control the specific conduct at issue. Under the franchise or license agreement governing the Charlotte location, Franchisor retained the right to review, approve, require, and prohibit local advertising and to control the manner in which its marks were used in advertising, including the advertisement identified in Exhibit A. Franchisor's retained right of control extended to the very conduct that caused Plaintiff's injury.

102. Plaintiff has been damaged in amounts to be proved at trial.

## FOURTH CAUSE OF ACTION
## (Violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 et seq.)

103. Plaintiff re-alleges each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

104. CRU operated CRU's website and social media accounts in order to promote CRU, to attract clientele thereto, and to thereby generate revenue for CRU.

105. As such, CRU's operation of the website and social media accounts, and its publication of Images thereon, were in commerce, in that they involved a business activity and the day-to-day activities and affairs of CRU in North Carolina.

106. CRU published Plaintiff's image and likeness on CRU's website and social media accounts to create the false impression that Plaintiff was either a club employee working at CRU, endorsed CRU, or was otherwise affiliated, associated, or connected with CRU.

107. As such, CRU's intent in publishing Plaintiff's image and likeness was to mislead the public as to Plaintiff's employment at and/or affiliation with CRU.

108. CRU's false advertising, misrepresentations, and breaches of its duties to Plaintiff and the public were unfair, in that they were immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers in North Carolina.

109. CRU's false advertising, misrepresentations, and breaches of its duties to Plaintiff and the public were deceptive, in that they possessed the tendency or capacity to mislead, or created the likelihood of deception, affecting members of the public in North Carolina and thereby causing injury to Plaintiff.

110. Upon information and belief, members of the public relied upon and were in fact deceived by CRU's false advertising, misrepresentations, and breaches of their duties to Plaintiff and the public.

111. CRU thus engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce in the state of North Carolina, and caused injury to the Plaintiff as complained of herein.

112. CRU's advertising practices offend the public policy of North Carolina insofar as they constitute misappropriation of Plaintiff's property rights in its own Images, breaches of copyrights and/or licenses held by others, and invasion of Plaintiff's privacy, for CRU's commercial benefit.

113. CRU's advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiff is affiliated, endorse, are associated with and/or employees.

114. CRU's advertising practices cause substantial injury to consumers and the Plaintiff by creating the false impression that Plaintiff is LUX LOUNGE, LLC an employee at, endorse, or are otherwise affiliated with CRU.

115. There are no benefits to CRU's advertising practices as set forth hereon except a benefit to CRU's own commercial interests.

116. Franchisor engaged in unfair and deceptive acts and practices in or affecting commerce in North Carolina. Franchisor licensed its marks for use in North Carolina, supplied or approved advertising creative published under those marks at the Charlotte location, and published or authorized the publication of the advertisement identified in Exhibit A depicting Plaintiff's likeness without authorization.

117. Franchisor's conduct was in or affecting commerce within the meaning of N.C. Gen. Stat. § 75-1.1(b), in that it involved Franchisor's regular business activities in licensing, marketing, and advertising CRU-branded locations in North Carolina.

118. Franchisor's conduct possessed the tendency and capacity to deceive members of the North Carolina public as to whether Plaintiff worked at, endorsed, or was affiliated with a CRU-branded location, and proximately caused injury to Plaintiff.

119. As a result of Defendants' unauthorized and misleading publication of Plaintiff's image and likeness on its website and social media accounts, Plaintiff's reputation was injured, and Plaintiff's ability to market itself as a model was injured.

120. As a result of Defendants' unauthorized and misleading use of Plaintiff's image and likeness, Plaintiff has suffered damages in an amount to be determined at trial.

121. Plaintiff is entitled to treble damages pursuant to N.C.G.S. Section 75-1.

122. Plaintiff is further entitled to an award of attorney's fees against and taxed to Defendants pursuant to N.C.G.S. Section 75-16.1

**FIFTH CAUSE OF ACTION**
**(Defamation)**

123. Plaintiff re-alleges each and every allegation set forth in the paragraphs above, and incorporates the same by reference as though fully set forth herein.

124. As detailed throughout this Complaint, CRU has published altered Images of Plaintiff in order to promote CRU to the general public and potential clientele.

125. CRU's publication of said Images constitutes a representation that Plaintiff was either employed by CRU, that they endorsed CRU, or that they had some affiliation with CRU.

126. None of these representations were true and violated Plaintiff's rights to their images as well as copyrights and licenses lawfully held by others.

127. In publishing Plaintiff's altered Images, it was CRU's intention to create a false impression to the general public that Plaintiff was an employee working at CRU or endorsed CRU.

128. CRU was at least negligent in publishing Plaintiff's image and likeness because it knew, or should have known, that Plaintiff was not employed by CRU, had no affiliation with CRU, had not consented to the use of itst Images, and had not been compensated for the use of its Images.

129. In the alternative, CRU published the Images of Plaintiff with actual malice, and its acts were gross and wanton, evidencing a reckless disregard for the rights of Plaintiffs, because it knew that Plaintiff was not employed by CRU, had no affiliation with CRU, had not consented to the use of its Images, and had not been compensated for the use of its Images.

130. Despite CRU's knowledge and reckless disregard of the true facts, it nevertheless made the decision to publish Plaintiff's image and likeness to attract clientele and generate revenue for itself.

131. Franchisor published and republished the altered Images of Plaintiff described in this Count, or authorized and ratified their publication, on brand-controlled social media accounts and in advertising creative it created, approved, or supplied for use at CRU-branded locations.

Franchisor knew or, in the exercise of reasonable care, should have known that the representations conveyed by those publications were false.

132. Defendants' publication of Plaintiff's image and likeness constitutes defamation per se under North Carolina law because said publication falsely accuses Plaintiff of having acted in a manner – i.e., working for or endorsing Defendants' business which would subject Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiff in the minds of right-thinking persons, and/or could deprive Plaintiff of confidence and friendly intercourse in society.

133. Defendants' publication of Plaintiff's image and likeness likewise constitutes defamation per se under North Carolina law because said publication would tend to impeach and injure each Plaintiff in its trade, business, and profession as a professional model.

134. This is because any company or brand that sought to hire Plaintiff as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as LUX LOUNGE, LLC, an inference which Defendants' publication of the Images support.

135. Defendants' publication of Plaintiff's image and likeness likewise constitutes defamation per se under North Carolina law because, insofar as said publication falsely portrays Plaintiff as a stripper, it imputes unchastity to her.

136. Defendants' publication of Plaintiff's Images caused Plaintiff to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## **SIXTH CAUSE OF ACTION**
### **(Negligence, Gross Negligence, and *Respondeat Superior*)**

137. Plaintiff re-alleges each and every allegation set forth in the paragraphs above, and incorporates the same by reference as though fully set forth herein.

138. Plaintiff is further informed and believes and hereon alleges that CRU maintains or should have maintained employee policies and procedures which govern the use of intellectual

property, copyrights, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and non-consensual use of intellectual property, copyrights, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

139. Further, CRU should have maintained, or failed to maintain, policies and procedures to ensure that its promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

140. CRU owed a duty of care to Plaintiff to ensure that its advertising and promotional materials and practices did not infringe on its property and publicity rights.

141. CRU further owed a duty of care to consumers at large to ensure that its promotional and/or advertising materials and campaigns were not deceptive or misleading in its advertising practices.

142. CRU breached its duty of care to both Plaintiff and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, copyrights, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

143. CRU failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with federal and North Carolina law, were not violated. CRU breached its duty of care to Plaintiff and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

144. CRU's breaches were gross and wanton, evidencing a reckless disregard for the rights of Plaintiff.

145. CRU's breaches were the proximate cause of the harm Plaintiff suffered when its Images were published without its consent, authorization, and done so in a false, misleading and/or deceptive manner.

146. Franchisor owed Plaintiff an independent duty of reasonable care arising from its

own retained control over the advertising published under its marks. Having reserved the right to create, review, approve, require, and prohibit advertising at CRU-branded locations, Franchisor was obligated to exercise that control with reasonable care so as not to appropriate the Images of persons with whom it had not contracted and whom it had not compensated.

147. Franchisor breached that duty by creating, approving, or supplying advertising creative depicting Plaintiff's Images without their authorization; by failing to promulgate or enforce any policy or procedure governing the sourcing and clearance of images used in advertising published under its marks; and by failing to require the removal of the advertisements identified in Exhibit A after it knew or should have known that Plaintiff had not consented to its use.

148. Franchisor's breach was a proximate cause of the harm Plaintiffs suffered.

149. As a result of Defendants' negligence and gross negligence, Plaintiff has suffered damages and is entitled to recover compensatory and punitive damages from the Defendants in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
**(Conversion)**

150. Plaintiff re-alleges each and every allegation set forth in the paragraphs above, and incorporates the same by reference as though fully set forth herein.

151. Plaintiff is, and at all relevant times was, the exclusive owner of all right, title and interest in its Images, and have property interests thereon.

152. By the conduct detailed above, CRU converted Plaintiff's property rights in its Images for its own use and financial gain.

153. As a result of CRU's unlawful conversion of Plaintiff's image and likeness, and publication of same, Plaintiff has suffered damages in an amount to be determined at trial.

154. Franchisor exercised unauthorized dominion and control over Plaintiff's Images by supplying, approving, publishing, or republishing them in advertising creative for its own commercial benefit, in denial of and inconsistent with Plaintiff's rights.

**<u>EIGHTH CAUSE OF ACTION</u>**
**(Unjust Enrichment)**

155. Plaintiff re-alleges each and every allegation set forth in the paragraphs above, and incorporates the same by reference as though fully set forth herein.

156. As set forth in detail above, CRU published Plaintiff's image and likeness in order to promote CRU to the general public and potential clientele.

157. CRU's publication was for the purpose of creating a false impression to the general public that Plaintiff was either a club employee working at CRU or endorsed CRU.

158. CRU's purpose in publishing Plaintiff's image and likeness was to benefit commercially due to its purported association with, employment of, and/or endorsement by Plaintiff.

159. Upon information and belief, CRU did in fact benefit commercially due to its unauthorized use of Plaintiff's image and likeness.

160. CRU has been enriched by its unauthorized control over, and publication of, Plaintiff's Image because said publication has assisted CRU in attracting clientele to CRU.

161. Plaintiff has not been compensated for CRU's commercial exploitation of their Images, and thus any financial benefit which CRU received due to said exploitation is unjust.

162. As such, Plaintiff has been damaged in an amount to be determined at trial.

163. Franchisor was enriched by the unauthorized use of Plaintiff's Images through royalties, license or franchise fees, advertising fund contributions, or a share of revenue generated at the Charlotte location, and through the promotional value the advertising conferred on the CRU brand it owns. Plaintiff has not been compensated, and Franchisor's retention of that benefit is unjust.

**NINTH CAUSE OF ACTION**
**(Quantum Meruit)**

164. Plaintiff re-alleges each and every allegation set forth in the paragraphs above, and incorporates the same by reference as though fully set forth herein.

165. Plaintiff is an internationally known model who earns its living appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

166. Companies and brands that choose to hire Plaintiff compensate it for its appearances.

167. Although CRU has availed itself of the benefit of being associated with Plaintiff, and making it appear to potential customers that Plaintiff either works at CRU, endorses CRU, or is otherwise affiliated with CRU, CRU has not compensated Plaintiff.

168. Plaintiff is therefore entitled to reasonable compensation for CRU's unauthorized use of its Images.

169. Franchisor accepted and availed itself of the benefit of Plaintiff's Images under circumstances in which it knew or should have known that Plaintiff expected compensation for the commercial use of her likeness. Franchisor has not compensated Plaintiff, who is entitled to the reasonable value of that use.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiff's Causes of Action;

(b) For an order permanently enjoining Defendants from using Plaintiff's Images to promote CRU's Lounge;

(c) For punitive damages in an amount to be determined at trial;

(d) For all costs and attorneys' fees incurred by Plaintiff in the prosecution of this Action;

(e) For such other and further relief as the Court may deem just and proper.

Dated: October 23, 2026.

***/s/ Matthew R. Gambale***
Matthew R. Gambale
N.C. Bar. No. 43359
**COUNSEL CAROLINA**
1100 Wake Forest Road, Suite 205
Raleigh, NC. 27604
919-373-6422
matt@counselcarolina.com